113 P.3d 112

**In the Matter of 2001 GMC Denali VIN: 1GKEK63U11J310577**

**$45,270.00 U.S. Currency**

**Taurus Millennium 9MM Semi–Auto Handgun Serial # TTG45119**

**Holster for Semi–Auto Handgun**

**Sprint SCP4700 Cellular Phone Serial # F771BFH**

**STATE of Arizona, Appellee,**

v.

**Robert Nathaniel JACKSON, an individual, Appellant.**

No. 1 CA–CV 04–0452.

Court of Appeals of Arizona, Division 1, Department C.

May 19, 2005.

Peter Van Haren, Phoenix City Attorney, By Bianca E. Bentzin, Assistant City Prosecutor, Phoenix, for Appellee.

Jason Beskind & Associates, By Eric T. Sellers, Scottsdale, for Appellant.

**OPINION**

BARKER, J.

¶ 1 Robert Nathaniel Jackson ("appellant") appeals from the trial court's refusal to grant him relief from a final judgment entered in a forfeiture proceeding. In this opinion, we reconcile potentially conflicting portions of Arizona's statutory forfeiture scheme.[1] Ariz. Rev.Stat. ("A.R.S.") §§ 13–4301 to –4315 (2001).

**I.**

¶ 2 On March 18, 2003, City of Phoenix police officers responded to an aggravated assault call. Upon arriving at appellant's residence, the officers spoke with appellant, as well as Frank Nick Passalacqua ("Passalacqua") and Nicole Krank. The officers learned that appellant's girlfriend, Tanya Chavez ("Chavez"), had shot at appellant and then left. The responding officers informed a second set of officers of the circumstances surrounding the assault. The other officers decided to wait and see if Chavez returned to the neighborhood.

¶ 3 Eventually Chavez returned and was placed under arrest. At the time of her arrest, the officers discovered a small amount of marijuana on her person. She told the officers that she received the marijuana from appellant and that appellant was selling marijuana out of his house. The officers returned to appellant's house to tell him that they had arrested Chavez.

¶ 4 Upon speaking with appellant the officers noticed the smell of marijuana emanating from the house. They asked appellant about the smell, and he admitted that he had recently smoked marijuana. The officers decided to detain appellant and obtain a search warrant for the house. Having obtained the warrant, the officers searched the house and discovered 568 grams of marijuana, material used to package marijuana for resale, two scales, two cellular phones, a handgun, a holster, and $45,270 in United States currency. The officers also searched two vehicles parked at appellant's house: a 2001 GMC Denali (which contained one and a half

pounds of marijuana and packaging materials) and a 2000 Cadillac DeVille (which contained marijuana seeds and packaging materials). The officers seized the above items.

¶ 5 During the search the officers also learned that Eugene Gaul ("Gaul"), one of appellant's roommates, was currently in Chicago, allegedly to sell a large amount of marijuana. The Illinois State Police raided Gaul's hotel room in Chicago and discovered $44,000 in United States currency. A drug detection dog reacted to the money, indicating there was drug residue on the money.

¶ 6 Passalacqua later spoke with the police about the illegal activity at the house. He stated appellant was involved in a marijuana conspiracy and there were many other people involved.

¶ 7 All of the items seized for evidence on March 18, 2003 were seized for forfeiture on March 24, 2003. On April 11, 2003, the state sent appellant a copy of the "Notice of Seizure for Forfeiture and Notice of Pending Forfeiture Making Uncontested Forfeiture Available." The notice was sent via certified mail and was signed for by appellant on April 14, 2003. Information regarding the pending forfeiture was also published in the *Arizona Business Gazette* on April 17, 2003. On May 7, 2003, appellant filed a "Verified Claim Against Property ... or, in the Alternative, Petition for Return of Property." This filing claimed the $45,270 was "acquired from the sale of a 1999 Chevrolet Tahoe ($20,000); settlement on a personal injury claim for burns over a large portion of [appellant's] body from an aerosol can explosion ($30,000) and monies legally earned from [appellant's] vending machine business." The filing also alleged that the state had not demonstrated probable cause for the forfeiture and the state had failed to comply with the procedural requirements of forfeiture such that a return of the seized property was required.

¶ 8 On July 11, 2003, the state filed a "Notice of Statutory Deadline to File *In Rem* Complaint." That filing stated a " 'Declaration of Forfeiture, Remission or Mitigation' was provided to USAA [Federal Savings

---

1. Appellant raised additional issues, which we have addressed in a separately filed memoran-
dum decision pursuant to Arizona Rule of Civil Appellate Procedure 28(g).

Bank] on July 9, 2003." Based on this declaration, the state notified the court that it would file a complaint for *in rem* forfeiture by September 7, 2003. The state filed the complaint for *in rem* forfeiture of property on September 3, 2003. Appellant did not file an answer. On October 2, 2003, the state hand-delivered a letter to appellant's counsel advising him that he had ten days to file an answer to the complaint. Again, no answer was filed. Three months later, on January 14, 2004, the state filed an "Undisputed Application for Order and Judgment of Forfeiture." The trial court filed an order on January 20, 2004, forfeiting portions of the property[2] to the State of Arizona.

¶ 9 Just over one week after the trial court filed its order, appellant filed a "Motion for Summary Judgment on Pending Forfeiture." The motion argued the state had failed to timely proceed with forfeiture and that appellant was entitled to an immediate return of the property. The motion made no mention of the recently signed order of forfeiture. The state responded to the motion, arguing that appellant had failed to respond to the state's filings and the summary judgment motion was moot because the forfeiture had already taken place. In his reply to the state's filing, appellant asked "for an Order setting aside the Order of Forfeiture." This relief may be granted under Arizona Rule of Civil Procedure 60(c) ("Rule 60(c)").

¶ 10 The trial court denied appellant's motion on May 26, 2004. In the minute entry denying summary judgment, the court stated appellant should have filed an answer to the complaint and appellant had been provided adequate notice by the state as required under the statutory forfeiture scheme. Ap-

pellant filed a notice of appeal on June 8, 2004.[3] We do not have jurisdiction for the denial of a motion for summary judgment absent extraordinary circumstances, which are not present here. *Safeway Stores, Inc. v. Superior Court (Kaliff)*, 19 Ariz.App. 210, 212, 505 P.2d 1383, 1385 (1973) ("The denial of a motion for summary judgment is not appealable nor is it even reviewable upon appeal from the final judgment, except under very unusual circumstances.") (citation omitted). Pursuant to A.R.S. § 12–2101(C) (2003), however, we have jurisdiction over "any special order made after final judgment." The denial of a Rule 60(c) motion is such an order. *See Birt v. Birt*, 208 Ariz. 546, 549, ¶ 8, 96 P.3d 544, 547 (App.2004) (finding jurisdiction for denial of Rule 60(c) motion under § 12–2101(C)). As appellant also requested Rule 60(c) relief, and such relief was denied, we have jurisdiction here.

## II.

¶ 11 Our first task when evaluating relief sought pursuant to Rule 60(c) is determining which provision of that rule is applicable. "If the motion does not set forth a basis recognized by the rule for setting aside a judgment, relief must be denied." *Welch v. McClure*, 123 Ariz. 161, 165, 598 P.2d 980, 984 (1979). In his filings, appellant asserted that the forfeiture statutes did not require him to file an answer to the state's *in rem* complaint. In conjunction with the request to set aside the forfeiture order, we interpret this assertion as a claim that appellant's failure to file a timely answer was "excusable neglect." This is one of the acceptable bases for relief listed in Rule 60(c)(1).[4] In order to

---

2. The two vehicles were released to other individuals who had asserted valid claims.

3. The notice of appeal was filed before the trial court issued a signed final order. Because the appellee does not claim that the premature appeal was prejudicial, we need not dismiss the appeal. *Barassi v. Matison*, 130 Ariz. 418, 422, 636 P.2d 1200, 1204 (1981) ("[A] premature appeal from a minute entry order in which no appellee was prejudiced and in which a subsequent final judgment was entered over which jurisdiction may be exercised need not be dismissed.").

4. It is also possible to interpret appellant's request for relief as a request under Rule 60(c)(6). That portion of the rule allows a court to grant relief from a final judgment for "any other reason justifying relief from the operation of the judgment." Ariz. R. Civ. P. 60(c)(6). Our case law permits the use of Rule 60(c)(6) in "'extraordinary circumstances of hardship or injustice,' other than or in addition to those circumstances set out in clauses (1) through (5)." *Gorman v. City of Phoenix*, 152 Ariz. 179, 182, 731 P.2d 74, 77 (1987) *quoting Davis v. Davis*, 143 Ariz. 54, 57, 691 P.2d 1082, 1085 (1984); *Edsall v. Superior Court (Edsall)*, 143 Ariz. 240, 243, 693 P.2d 895, 898 (1984). While we do not find Rule

consider whether Rule 60(c) relief is appropriate,[5] it is first necessary to consider the procedure whereby appellant's property was forfeited to the state.

¶ 12 The state initially chose to seek forfeiture of appellant's property under A.R.S. § 13–4309 (2001). Pursuant to that section, the state provided notice to appellant that uncontested forfeiture was available. After receiving the forfeiture notice, appellant filed a claim with the court. A.R.S. § 13–4309(2). Appellant's claim complied with the requirements for such claims. A.R.S. § 13–4311(E) (2001). The state then opted to pursue judicial forfeiture proceedings pursuant to A.R.S. § 13–4311(B).

¶ 13 Under A.R.S. § 13–4311(B), the state may bring a civil *in rem* action "*in addition to* or *in lieu of* . . . the uncontested civil forfeiture procedures set forth in § 13–4309." (Emphasis added.) The state filed an *in rem* action on September 3, 2003. Appellant was under no obligation to file a duplicate claim in the judicial forfeiture proceedings, A.R.S. § 13–4309(6)(a), but he *was* obliged to follow other procedures outlined in A.R.S. § 13–4311. Subsection (G) of section 4311 provides, in relevant part:

> Within twenty days after service of the complaint, the claimant *shall file and serve the answer* to the complaint . . . . The answer shall . . . comply with the Arizona rules of civil procedure relating to answers . . . . If no proper answer is timely filed, the attorney for the state shall proceed as provided in §§ 13–4314 and 13–4315 with ten days' notice to any person who has timely filed a claim that has not been stricken by the court.

(Emphasis added.) Appellant concedes that he did not file a timely answer to the complaint. Appellant's failure to file a timely answer pursuant to A.R.S. § 13–4311(G) allowed the state to proceed with forfeiture according to A.R.S. § 13–4314 (2001). The forfeiture judgment was granted because appellant failed to file an answer to the state's complaint. Thus, the forfeiture order in this case is the functional equivalent of a default judgment. *Cf. Norriega v. Machado,* 179 Ariz. 348, 353, 878 P.2d 1386, 1391 (App.1994) (analogizing forfeiture decision to default judgment).

### III.

¶ 14 We are not aware of any published opinions that deal with the standards for Rule 60(c) relief from uncontested forfeiture orders. As an uncontested forfeiture order is effectively a default judgment, we turn to the case law pertaining to default judgments. Generally, "[w]hether to set aside an entry of default or a default judgment is entirely within the trial court's discretion." *Gen. Elec. Capital Corp. v. Osterkamp,* 172 Ariz. 191, 194, 836 P.2d 404, 407 (App.1992). The Arizona Supreme Court, however, has provided guidance for the exercise of that discretion. A default judgment may be set aside

> when, but only when, the moving party has made an adequate showing of each of the following elements: (1) that it acted promptly in seeking relief from the default judgment[;] (2) that its failure to file a timely answer was excusable under one of the six subdivisions of Rule 60(c) . . . ; and (3) that it had a meritorious defense.

*United Imps. & Exps., Inc. v. Superior Court,* 134 Ariz. 43, 45, 653 P.2d 691, 693 (1982). If appellant fails on any of the three prongs, the 60(c) motion should be denied. *See id.* Because we find appellant did not provide evidence that his failure to file a timely answer was excusable, we need not address the other two elements.

¶ 15 "The general test of what is excusable is whether the neglect or inadvertence is such as might be the act of a reasonably prudent person under the same circumstances." *Coconino Pulp & Paper Co. v. Marvin,* 83 Ariz. 117, 120, 317 P.2d 550, 552 (1957). Under this standard, the

60(c)(6) applicable here, even if it were applicable the statutory construction we give to A.R.S. §§ 13–4309, –4311, –4314 and –4315 (2001) makes relief inappropriate under that section as well.

5. We limit our consideration of the issues to those pertinent to Rule 60(c) relief, as a Rule 60(c) motion is not a substitute for an appeal. *Ariz. Prop. & Cas. Ins. Guar. Fund v. Lopez,* 177 Ariz. 1, 3, 864 P.2d 558, 560 (App.1993).

trial court had to determine if "a reasonably prudent person" would have failed to file an answer to the state's complaint. *Id.* Appellant believes his failure to file a timely answer was excusable for three reasons. First, appellant believes the state's failure to provide a "declaration of forfeiture" meant that he was entitled to a return of his property. Second, appellant claims that the ten-day letter he received alerting him to the need to file an answer was only directed at a vehicle and not at the currency. And third, appellant believes that the statutory scheme did not require him to file an answer because he had already filed a claim. We deal with each of these issues below.

## A.

¶ 16 In his claim filed May 7, 2003, appellant argued the state had failed to submit a written declaration of forfeiture as required by A.R.S. § 13–4309(3)(b). According to appellant, this failure constituted "a waiver of the State's right to seek forfeiture, and require[d] return of the seized property." We do not agree.

¶ 17 Section 13–4309(3) applies to "owners or interest holders [who] timely file a petition for remission or mitigation." The state is required to provide a written declaration of forfeiture to those owners or interest holders. A.R.S. § 13–4309(3)(b). There is a difference between a "claim" and a "petition for remission or mitigation." [6] *See* A.R.S. § 13–4309(2) (stating owner or interest holder can file claim *or* petition for remission or mitigation). Appellant filed a *claim,* not a *petition for remission or mitigation.* Thus, A.R.S. § 13–4309(3)(b) does not apply and the state did not need to provide a declaration specifically to him.[7] Therefore, appellant's failure

to file an answer was not excusable under this theory.

## B.

¶ 18 Appellant's second claim is that the ten-day letter required by A.R.S. § 13–4311(G) dealt only with the GMC Denali and not with the other property currently at issue. The letter's subject line stated: *"In The Matter of 2001 GMC Denali ... et al."* The body of the letter advised appellant that the state would seek an order of forfeiture because no response had been filed to the complaint for *in rem* forfeiture of property. The complaint specifically identified the currency as one of the items subject to forfeiture.[8] The fact that the subject line referenced "et al.," instead of the entire caption, is no basis for relief.

¶ 19 We find the letter's subject line and body satisfied the statutory requirement. Thus, the state complied with its duty to provide ten days' notice. Defendant's failure to file an answer is not excusable under this theory.

## C.

¶ 20 Appellant's third argument is that he was under no statutory obligation to file an answer in response to the state's *in rem* complaint. Appellant argues the trial court erred by "requiring that Appellant file something additional when his initial filing met all statutory requirements." Appellant's argument represents an erroneous reading of the relevant statutes. As mentioned above, *supra* ¶ 13, when the state filed an *in rem* complaint appellant had an obligation to file an answer. A.R.S. § 13–4311(G). This requirement applies even if a timely claim has

---

6. We note that appellant labeled his initial filing as a "Verified Claim Against Property ... or, in the Alternative, Petition for Return of Property." According to A.R.S. § 13–4309(2), "[a]n owner of or interest holder in the property may elect to file either a claim ... or a petition for remission or mitigation of forfeiture ... *but may not file both.*" (Emphasis added.) On July 11, 2003, the state filed a "Notice of Statutory Deadline to File *In Rem* Complaint." That filing, sent to appellant's attorney, included a statement that appellant had filed a *claim.* Thus, appellant was on notice that the state was treating his filing as a

claim *not* as a petition for remission. Also, in the "Order and Judgment of Forfeiture" the court stated appellant had filed a claim. Pursuant to A.R.S. § 13–4309(2) and the first title listed on appellant's filing, it was appropriate for the state to treat the filing as a claim.

7. The state did provide a declaration to USAA.

8. The complaint also identified "the handgun, holster, scales and cellular phones."

already been filed. We have stated previously that "[a] person who desires to challenge forfeiture proceedings under A.R.S. section 13–4311 must file *both* a claim and, eventually, an answer." *State v. Five Thousand Five Hundred Dollars in United States Currency,* 169 Ariz. 156, 159, 817 P.2d 960, 963 (App. 1991) (emphasis added). Because this case raises issues not present in *Five Thousand,* we set out a more detailed analysis of the requirement to file an answer even though a timely claim had already been filed.

¶ 21 Section 13–4311(G) states a "claimant *shall* file and serve the answer to the complaint." (Emphasis added.) "The ordinary meaning of 'shall' in a statute is to impose a mandatory provision." *HCZ Constr., Inc. v. First Franklin Fin. Corp.,* 199 Ariz. 361, 364, ¶ 11, 18 P.3d 155, 158 (App.2001). Appellant fails to provide, and we are unaware of, any evidence the legislature's use of the term "shall" in A.R.S. § 13–4311(G) was meant "to indicate desirability, preference, or permission" rather than a mandatory directive. *Ariz. Downs v. Ariz. Horsemen's Found.,* 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981). Accordingly, appellant had an obligation to file an answer.

¶ 22 Appellant's failure to file a timely answer triggered the provision that the state "shall proceed as provided in §§ 13–4314 and –4315 with ten days' notice to any person who has timely filed a claim that has not been stricken by the court." A.R.S. § 13–4311(G). Section 13–4314 sets out the procedure whereby a court may order forfeiture. Under that section a court shall order forfeiture only when the state files a "written application showing jurisdiction, notice and facts sufficient to demonstrate probable cause for forfeiture." A.R.S. § 13–4314(A). The state met these requirements in its January 14, 2004 filing. Section 13–4314(A) does, however, contain language that can be read to limit its application to situations where no claim has been timely filed: *"If no petitions for remission or mitigation or claims are timely filed … the attorney for the state shall apply to the court for an order of forfeiture."* A.R.S. § 13–4314(A) (emphasis added). Additionally, § 13–4314(B) provides that *"[a]fter the court's disposition of all claims timely filed* under this chapter, the state has clear title to the forfeited property and the court shall so order." (Emphasis added.)

¶ 23 Because appellant filed a timely claim, he asserts that the procedures in § 13–4314 should not be followed. He argues his claim should have been adjudicated on the merits. We disagree.

¶ 24 Any potential contradiction between § 13–4314(A) and (B) on the one hand, and § 13–4311(G) on the other hand, is resolved by the more specific language in § 13–4311(G), detailing the procedure the state should follow when a *claim* has been timely filed but an *answer* has not been so filed. *See State v. Davis,* 119 Ariz. 529, 534, 582 P.2d 175, 180 (1978) (observing "specific law is controlling over the general"). Section 13–4311(G) states "[i]f no proper answer is timely filed, the attorney for the state shall proceed as provided in §§ 13–4314 and 13–4315 with *ten days' notice to any person who has timely filed a claim."* (Emphasis added.) Thus, the plain language of § 13–4311(G) expressly provides that §§ 13–4314 and –4315 apply even though a timely claim *has been* filed so long as a timely answer *has not* been filed.

¶ 25 The circumstance described in § 13–4311(G) is the precise circumstance here. Appellant filed a timely claim. Appellant failed, however, to answer the state's complaint after receipt of the ten-day letter specified in § 13–4311(G). That section expressly invokes the default mechanism of §§ 13–4314 and –4315 in such a setting. Neither §§ 13–4314(A) nor (B) specifically addresses a situation in which there was a timely *claim,* but a timely *answer* was also required but not filed.

¶ 26 We honor the plain language of a statute. *E.g., Bigelsen v. Ariz. State Bd. of Med. Exam'rs,* 175 Ariz. 86, 90, 853 P.2d 1133, 1137 (App.1993) ("If the language of the statute is clear and unambiguous, it ordinarily must be regarded as conclusive unless the legislature has clearly expressed a contrary intent."). We also attempt to reconcile potentially conflicting statutory provisions, if possible. *E.g., State ex rel. Larson v. Farley,* 106 Ariz. 119, 122, 471 P.2d 731, 734

(1970) ("If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent."); *Baker v. Gardner,* 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988) ("Courts construe seemingly conflicting statutes in harmony when possible."). We also avoid constructions that render one portion of a statute a nullity. *E.g., In re Maricopa County Superior Court No. MH 2001-001139,* 203 Ariz. 351, 354, ¶ 17, 54 P.3d 380, 383 (App.2002) ("A cardinal rule of statutory interpretation is to avoid, if possible, an interpretation which renders superfluous any portion of a statute."). And, as mentioned earlier, we give preference to specific statutory provisions over general ones. *Davis,* 119 Ariz. at 534, 582 P.2d at 180.

¶ 27 If we construed § 13–4314(A) or (B) as appellant requests (that all timely claims must be heard even in formal adjudications when a timely answer was required but not filed), we would violate the pertinent principles of statutory construction. The ten-day letter provision of § 13–4311(G) would not be recognized; that provision would become a nullity; and the specific provision would be struck in the face of a more general provision. Section 13–4311(G) invokes the default mechanism of §§ 13–4314 and –4315 specifically for those who have *"timely filed a claim* that has not been stricken by the court." A.R.S. § 13–4311(G) (emphasis added). Yet we can still give meaning to the provisions of § 13–4314(A) and (B) (allowing for the adjudication of timely claims) by construing them to apply to claims for which another statute, such as § 13–4311(G), does not require a subsequent answer. Thus, we render a construction that is cohesive and does not ignore any express terms of the statutory scheme.

¶ 28 Our holding is also consistent with our previous statement in *Five Thousand,* 169 Ariz. at 159, 817 P.2d at 963 (requiring both claim and answer). Accordingly, appellant had an obligation to file an answer. His failure to do so allowed the state to proceed with the forfeiture.[9] Appellant is not entitled to relief on these grounds.

**D.**

¶ 29 In summary, the state did not need to provide a declaration of forfeiture; the state provided an appropriate ten-day letter; and once the state filed a complaint, appellant had an obligation under § 13–4311(G) to file an answer. We conclude that appellant's failure to file an answer was not a product of "excusable neglect." Ariz. R. Civ. P. 60(c). Accordingly, appellant is not entitled to relief.

**IV.**

¶ 30 For the foregoing reasons, and those set forth in the memorandum decision filed simultaneously, the order of the trial court is affirmed.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge and LAWRENCE F. WINTHROP, Judge.

9. We also note that A.R.S. § 13–4311(D) requires a court to hold "a hearing to adjudicate the validity of [a] claimed interest in the property." *See State v. Benson,* 172 Ariz. 15, 20, 833 P.2d 32, 37 (App.1991) ("Once the owner or interest holder files a proper claim, he becomes a 'claimant' and is entitled to a hearing to adjudicate the validity of his interest."). But § 13–4311 contemplates a hearing to determine the validity of the claimant's interest in the property, not the validity of the forfeiture. Because there was no dispute that the property originally belonged to appellant, there was no need to hold a hearing "to adjudicate the validity of his interest" in the property. A.R.S. § 13–4311(D). Additionally, the more specific requirements of § 13–4311(G), that an answer be filed, would also apply if the state filed (as it did here) a complaint under § 13–4311(A). If no answer is filed the state may proceed under §§ 13–4314 and –4315 as outlined herein.